### In re O'BRIEN'S ESTATE.

(Supreme Court, Appellate Division, First Department. February 21, 1896.)

DESCENT AND DISTRIBUTION—NEXT OF KIN—EVIDENCE.

   Where the identity of an intestate, as being the grandaunt of petitioner claiming to be next of kin, was in question, and witnesses, who knew

intestate both in Ireland and in the United States, testified as to the business in which she was engaged, the localities in which it was prosecuted, and the different names by which she was known, and stated that the mother of petitioner was a niece of intestate, and came from Ireland at intestate's request, and was for a time in her employ, such identity was shown by satisfactory evidence.

Appeal from surrogate's court, New York county.

Petition by Lizzie Thorp, as grandniece and only next of kin of Annie O'Brien, or Larkin, deceased, intestate, for the assets of the estate of decedent, which had been paid by the public administrator into the treasury of the city of New York. From a decree in favor of petitioner, the comptroller of the city of New York appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

C. A. O'Neil, for appellant.

B. Metzger, for respondent.

PATTERSON, J. This is an appeal from a decree of the surrogate of the county of New York, by which it was adjudged that one Lizzie Thorp, the petitioner, was the only surviving next of kin of one Annie O'Brien, or Larkin, who died intestate in the city of New York in the month of September, 1889. It appeared that the public administrator of the city and county of New York was granted administration upon the estate of the intestate; that he collected the assets, and paid them into the treasury of the city of New York, as required by law. In July, 1893, this petitioner made application to the surrogate, claiming to be a grandniece and the only next of kin of the intestate, and asserting her right as such next of kin to the moneys on deposit to the credit of the estate, as above referred to. Citations were issued to various parties, including the public administrator and the comptroller of the city of New York; and upon the return of the citations, by an order of the surrogate, a referee was appointed to take proof of the rights and interests of the petitioner, Lizzie Thorp, and any other person or persons, in the property, credits, chattels, and moneys belonging to the said estate of Annie O'Brien, or Larkin, deceased, and to report the same. The referee performed the duty imposed upon him, and has made a very elaborate report, containing an analysis of the evidence before him, and that report has been confirmed by the surrogate.

There are two questions of fact presented by the record, and the first relates to the identity of the intestate, Annie O'Brien, as being the same person claimed by the petitioner to have been her grandaunt. It was proven by two witnesses who knew Annie O'Brien in Ireland, in her childhood, that her maiden name was Ann Cody; that she came to the United States, settled in the city of New York, and there became notorious as a person engaged in keeping disreputable places of resort in the lower part of the city. It is shown by some of the witnesses that she went by the name of "Red Ann"; and it is also stated that she was known

by the additional sobriquet of "Red Liza," and that she also assumed the names of Whitney and of Smith. One of the witnesses who knew her in Ireland also recognized her in New York, saw her frequently for many years, and knew her by the several names above mentioned. The testimony shows that there was but one person in and about Water and Dover streets who kept places of resort of the character referred to and who was called "Red Ann." There was also proof before the referee that the petitioner's mother was a niece of Ann O'Brien, or Larkin, and that she came here from Ireland, having been sent for by her aunt, and that for a time she acted as cook for the O'Brien woman, but left her, being disgusted with her surroundings. The testimony was sufficient to justify the referee in the conclusion at which he arrived concerning the relationship existing between the aunt and the niece. There is some discrepancy in the testimony as to the precise places of residence of the intestate at various times, but her identity was sufficiently established. It was stated by some of the petitioner's witnesses that she kept a place of resort called "Boatman's Hall." It was undoubtedly proved that that place was not kept by her, but by one Miller. But there is testimony to show that the place kept by "Red Ann," although it had a distinct sign with another name, was, nevertheless, called "Boatman's Hall." We do not think that there can be any fair doubt that the intestate was shown by satisfactory evidence to have been the grandaunt of the petitioner.

The other question of fact related to the establishment of the petitioner's claim that she was the only next of kin. The intestate was married, but had no children, and her husband predeceased her. It was proven that she had but one sister, whose name was Margaret Cody, who married one Collins in Ireland. Margaret Collins had but one child, Bridget Collins. This Bridget was the same person referred to as having been brought to this country from Ireland by the intestate, and with whom she lived awhile as cook. Bridget Collins married one Thorp, who was the father of the petitioner. Many children were born to the Thorps, all of whom were dead at the time this intestate died, except three,— the petitioner and her two sisters. As these three Thorp children survived the intestate, each was entitled to one-third of her personalty. The surrogate, in his decree, has recognized and given enforcement to the rights of the three children by awarding to this petitioner one-third of the personalty absolutely, and giving to her in a representative capacity, as administratrix of the estates of her deceased sisters, the two other shares, to be held in equal parts.

The case presenting merely questions of fact, and we concurring in the conclusion at which the surrogate arrived, the decree must be affirmed. We are compelled to say that we see no merit in the appeal which has been taken by the comptroller, and therefore no costs are awarded him on this appeal. All concur.